FILED
Apr 11, 2025
02:46 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Jason Bednar | ) Docket No. 2018-01-0218 |
| | ) |
| v. | ) State File No. 9290-2018 |
| | ) |
| Memorial Healthcare System d/b/a | ) |
| Memorial Hospital, et al., | ) |
| | ) |
| and | ) |
| | ) |
| Troy Haley, Administrator of the | ) |
| Bureau of Workers' Compensation | ) |
| Subsequent Injury and Vocational | ) |
| Recovery Fund | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

**Affirmed in Part, Reversed in Part, and Remanded**

---

In this appeal, the employee claims he is permanently and totally disabled due to a work incident that caused physical and mental injuries. The employer initially authorized medical treatment but later disputed compensability based primarily on the employee's preexisting physical and mental conditions. Following the trial, the court concluded that the employee had not met his burden of proof in establishing a compensable physical or mental injury. Specifically, the court determined that because the employee failed to meet his burden of proving a compensable physical injury, he also could not prove that he sustained a compensable mental injury pursuant to Tennessee Code Annotated section 50-6-102(15). The employee has appealed. Upon careful consideration, we conclude the preponderance of the evidence supports a finding that the employee suffered a compensable temporary aggravation of a preexisting condition, and we therefore reverse the trial court's finding that the employee did not prove a compensable physical injury. We remand the case for the trial court to address whether, in light of our holding with respect to the employee's physical injuries, he suffered a compensable mental injury and if so, the extent of the employee's psychiatric impairment and resulting permanent disability, if any.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellant, Jason Bednar

C. Douglas Dooley and Mickala J. Lewis, Chattanooga, Tennessee, for the employer-appellee, Memorial Healthcare System d/b/a Memorial Hospital

Patrick Ruth, Nashville, Tennessee, for the appellee, Tennessee Subsequent Injury and Vocational Recovery Fund

## Factual and Procedural Background

Jason Bednar ("Employee") began working as a registered nurse for Memorial Healthcare System d/b/a Memorial Hospital ("Employer") in 2015. On January 30, 2018, Employee was assisting with the transfer of a patient when he allegedly felt a sharp pain in his back and legs. Employee reported the incident to Employer and was eventually authorized to see Dr. Richard Pearce, an orthopedic surgeon. After Employee received certain medical treatment, Employer elected to deny the claim and asserted that Employee's complaints did not arise primarily out of the employment due to Employee's preexisting physical and mental conditions.

### *Previous Relevant Medical Treatment*

Employee has a lengthy history of receiving treatment for low back complaints. Following a car accident at the age of nineteen, Employee received chiropractic treatment for low back complaints. Several years later, in 2005, Employee reported low back pain while repositioning a patient at work. He received physical therapy and medication, and he reported his symptoms resolved in two to three weeks. Not long after, Employee was lifting stones at home when he injured his back again. Employee recalled minimal pain with no lower extremity issues and stated that his symptoms resolved quickly.

More significantly, in July 2006, while working for a previous employer, Employee was transferring a patient from a wheelchair to the bed when the patient fell, causing Employee to catch the patient under his arms and experience pain in his low back and legs. He reported the incident to his employer and submitted a workers' compensation claim, which was accepted as compensable. He treated with Dr. David Lowry, who diagnosed him with degenerative disc disease at L4-5, a disc protrusion at L4-5, low back pain, spina bifida occulta at L5, and radiculitis in his right leg. Dr. Lowery placed Employee at maximum medical improvement in October 2006 and assigned a 5% impairment rating to the body as a whole. Employee settled his claim in 2007, retaining his entitlement to future medical benefits for the 2006 work injury.

In October 2008, Employee began seeing Dr. Stephen Musick on an ongoing basis for pain management for low back pain radiating into his left leg and foot. He described two prior back injuries: the motor vehicle accident when he was a teenager and the incident when he was moving stones. Throughout the course of his treatment, Dr. Musick prescribed medication, including gabapentin, oxycodone, fentanyl patches, and epidural steroid injections. In 2016, during a visit with Dr. Musick, Employee complained of severe pain that was only relieved by lying on his back and taking medication. During this visit, Employee's wife requested a referral for a mental health care provider.

Thereafter, Employee was seen at Vanderbilt University Hospital's emergency department with complaints of anxiety, depression, and "feeling out of control." Employee reported an inability to focus or concentrate and constant sweating. The psychiatrist noted Employee reported "severe depression" that impacted his sleep and activities of daily living and diagnosed him with acute anxiety, acute-on-chronic depression, and musculoskeletal chest pain. Employee declined in-patient treatment. During his next visit with Dr. Musick, Employee discussed his treatment at Vanderbilt and requested amitriptyline for depression and anxiety. He also informed Dr. Musick that he had gone to Vanderbilt the previous day to have a skin cancer removed, which was more significant and painful than expected. Dr. Musick documented Employee's increased stress due to his medical issues and adjusted his current narcotics prescriptions.

Shortly thereafter, Employee began therapy with a licensed social worker at Helen Ross McNabb Center with complaints of ongoing depression due to chronic back pain. The social worker initially diagnosed Employee with major recurrent moderate depression. However, during Employee's next visit, the treating psychiatrist removed that social worker's diagnosis, replacing it with a new diagnosis of generalized anxiety disorder ("GAD"). In subsequent visits, Employee described continuing depression and noted that Ativan, first prescribed by his primary care physician in 2009, was the only medicine that helped him.

Also in 2016, Dr. Musick referred Employee to Dr. Richard Pearce, an orthopedist, for treatment of his ongoing low back pain and right leg complaints from the 2006 work injury. During the evaluation, Employee complained to Dr. Pearce of worsening pain, anxiety, and depression. Dr. Pearce discussed various treatment options, including the possibility of a fusion at L4-5 and L5-S1, but Employee elected to continue with conservative treatment at that time.

In 2017, Dr. Musick referred employee to Dr. Gregory Ball for the assumption of pain management treatment. Employee first saw Dr. Ball in April 2017. Employee's intake form revealed ongoing mental health complaints, and Dr. Ball noted that, although Employee continued to work full time as a nurse, he was unable to enjoy most outdoor activities. Employee described pain in his right low back, buttock, leg, and foot. Dr. Ball diagnosed Employee with, among other things, lumbosacral radiculopathy, chronic low

back pain, lumbar disc disease, lumbar spinal stenosis, inflammation of the right sacroiliac joint, and long-term prescription drug therapy, including opiates.  Dr. Ball increased Employee's medication dosage.

In August 2017, Dr. Pearce performed a surgical fusion at L4-5 and L5-S1, after which Employee reported brief improvement of his symptoms.  Employee saw Dr. Pearce again on August 22 for follow-up and complained of lumbar pain and weakness, burning in both legs, and right buttock pain.  However, by December, Employee reported being able to walk five miles per day with no anxiousness or depression.  As a result, Dr. Pearce released him to return to work with no restrictions on January 7, 2018.

On January 18, 2018, Employee returned to Dr. Ball with complaints of low back pain, bilateral leg pain, right leg numbness, and persistent right buttock pain.  Dr. Ball performed an injection into his piriformis muscle, and the medical record reflects that Employee was reluctant to decrease his narcotics due to ongoing pain after his return to work.  Approximately two weeks later, on January 30, 2018, Employee suffered the alleged work injuries at issue in this appeal.

*Post-Injury Medical Treatment*

Following the January 30 work incident, Employer authorized Employee to see Dr. Pearce in February 2018.  At that visit, Employee reported complaints of low back pain on the right side with right lateral lower leg numbness and tingling in the feet.  X-rays revealed that the hardware associated with the spinal fusion had not failed.  Dr. Pearce diagnosed Employee with an acute back strain, ordered a lumbar MRI, and referred Employee back to Dr. Ball for continued pain management.

Employee saw Dr. Ball again in March, who provided most of the same diagnoses as in April 2017, including, among other things, lumbosacral radiculopathy, sciatica on the right side, lumbar disc disease, spinal stenosis of the lumbar region, inflammation of the right sacroiliac joint, low back pain, and chronic and ongoing long term therapeutic opiate usage.

In April 2018, Employee returned to Dr. Pearce, who noted Employee had fallen repeatedly over the past three months.  However, Employee reported that his low back pain was better and indicated he had no left leg pain.  Dr. Pearce reviewed Employee's MRIs and noted no significant change from the pre-accident MRI taken on October 16, 2017.

When Employee returned to Dr. Ball later that month, Dr. Ball addressed the new work injury, which he said resulted in right sacroiliac ("SI") joint pain and an increase in his pain levels due to the cessation of fentanyl usage.  Dr. Ball causally related Employee's need for an SI injection to his most recent work injury.  Dr. Ball also stated that Employee's current pain was a separate issue from his previous 2006 injury and was "above the baseline

4

of pain he was experiencing when he had the new injury." Employee continued to receive SI injections, and Dr. Ball continued to wean Employee's narcotic dosage.[1] In September 2018, a right knee EMG and nerve conduction study ("NCS") revealed some sciatic nerve neuropathy, but there was no evidence of lumbar radiculopathy.

On January 22, 2019, Dr. Ball made a direct referral to a psychiatrist, Dr. Aslam Sandvi, for Employee to be evaluated for depression. Employee gave a history of severe depression and anxiety since he was injured "due to chronic pain and inability to work." He reported mood swings, suicidal ideations, and chronic pain. Dr. Sandvi diagnosed Employee with recurrent severe major depression with vague suicidal ideation, GAD, and Post-Traumatic Stress Disorder ("PTSD"). He related Employee's current psychiatric problems "directly" to his "job-related injuries." Employee next returned to Dr. Pearce, who confirmed there was no change in his MRI from the previous diagnostic study. At this time, he advised Employee that he had nothing further to offer in terms of orthopedic treatment for his symptoms.

On March 25, 2019, Employer authorized Employee to see Dr. Chad Smalley for right knee pain. Following an MRI, Dr. Smalley determined Employee was not a surgical candidate. Employee obtained a second opinion, and that physician agreed with Dr. Smalley. A third physician, Dr. Michael Tew, described Employee's knee pain and weakness as nerve-related rather than mechanical. In 2020, Dr. Ball ordered another EMG/NCS on Employee's right knee, and the results were normal. Later that year, Employee returned to Dr. Tew, who agreed to perform knee surgery after Employee's spinal cord stimulator was removed. Although Dr. Tew performed surgery based on his reading of a medial meniscal tear on the MRI, he found no such tear during surgery. He did locate and repair a medial chondral defect. Although Dr. Tew found no evidence of an acute tear, he opined that Employee's "knee condition was caused by his work injury a few years ago." Dr. Tew later released Employee to return to work with restrictions and advised him to stop using the cane prescribed by Dr. Ball. In March 2021, after Employee reported pain levels of nine out of ten, Dr. Tew recommended pain management for complex regional pain syndrome ("CRPS").

After his knee surgery, Employee returned to Dr. Ball with complaints of worsening pain, stiffness in his knee, color and temperature changes in his lower leg, and sensitivity in his lower leg. Dr. Ball diagnosed a "new onset of CRPS symptoms" in Employee's right lower extremity. Employee later began to complain of increased pain and swelling in both knees.

In 2022, Employee had an intrathecal narcotic pump implanted to allow higher doses of narcotic pain medication. Employee continued to see Dr. Sandvi for ongoing psychiatric care and continued to report symptoms of severe depression. Employee also

---

[1] Employee later received a spinal cord stimulator in 2019.

continued to receive pain management from Dr. Ball and received transcranial magnetic stimulation ("TMS") therapy for his major depressive disorder.

Dr. Ball placed Employee at maximum medical improvement on February 21, 2023, and assigned a 16% permanent anatomical impairment rating. He assigned 8% for CRPS, 8% for the sciatic nerve injury, 2% for induced testosterone deficiency (which he described as a side effect of the narcotics Employee was prescribed), and 1% for a medial meniscus tear.[2]

In June 2024, at Employer's request, Dr. Jeffrey Hazlewood performed a comprehensive review of Employee's medical records and a physical examination of Employee. He opined that the correct diagnosis attributable to the 2018 work injury would be a soft tissue injury, such as a lumbar strain, that should have resolved within four to eight weeks after the work incident. In addition to a physical examination of Employee, Dr. Hazlewood reviewed two different EMG tests and an MRI scan of the sciatic nerve and found no evidence of sciatic neuropathy or sciatic nerve injury.[3] Dr. Hazlewood disagreed that Employee had right-sided neuropathy and noted that the second EMG, performed in January 2020, was normal. He also noted that the November 18 MRI of the pelvis showed no abnormalities of the sciatic nerve. Dr. Hazlewood opined that Employee does not have sacroiliac joint dysfunction; a conclusion he believes is supported by the failure of the SI injections to provide relief. Moreover, Dr. Hazlewood disagreed that Employee has CRPS. He noted that in order to provide a reliable diagnosis of CRPS, certain criteria, known as the Budapest criteria, must be satisfied. One of those criteria is the presence of certain objective physical findings. During his physical examination of Employee, Dr. Hazlewood reported observing two out of nine of those objective findings: (1) hyperemia (redness in the feet and legs) and (2) edema (swelling) in both legs. Because the findings were present in both legs, not just the symptomatic one, Dr. Hazelwood ruled out CRPS. He also suggested that there were other, more likely causes of Employee's symptoms, such as disuse.

With regard to Employee's right knee, Dr. Hazlewood opined that these complaints were more than 50% caused by an arthritic process, especially given Employee's age and weight and the fact that surgical intervention was not helpful. Based on his review of Employee's medical records, including imaging studies, and his physical examination of Employee, Dr. Hazlewood opined that Employee did not suffer a permanent physical injury as a result of the 2018 work incident and qualified for no permanent anatomical impairment rating caused by that accident.

---

[2] Dr. Ball later removed the rating for the meniscal tear from his calculations after he learned that Dr. Tew's surgery revealed Employee did not have a meniscal tear.

[3] According to the evidence in the record, Dr. Hazlewood regularly orders and interprets EMG tests as part of his clinical practice.

With regard to Employee's mental conditions, Dr. Sandvi assigned a twenty percent impairment rating for Employee's recurrent severe major depression with vague suicidal ideation, GAD, and PTSD. At Employer's request, Dr. Stephen Montgomery, a forensic psychiatrist, also performed a psychiatric evaluation of Employee. He diagnosed Employee with, among other things, GAD, major depressive disorder, benzodiazepine and opioid dependence, and chronic pain. Dr. Montgomery assigned an impairment rating of 5% for the psychiatric conditions he determined had been aggravated by the most recent work accident, namely Employee's major depressive disorder and GAD. He testified that he disagreed with Dr. Sandvi's rating, in part, because "he did not assign any apportionment or consider any preexisting condition as part of his calculus."

At trial, which lasted three days, Employee, Dr. Hazlewood, and the parties' respective vocational experts testified live.[4] The testimony of Drs. Ball, Sandvi, and Montgomery were introduced by deposition. On October 10, 2024, the trial court issued an order denying Employee's request for benefits and dismissing his petition. In doing so, it considered the expert opinions of Dr. Ball and Dr. Hazlewood. The court first noted that neither party had presented proof that Dr. Ball had been selected from a panel and that, therefore, his opinion was not entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(12)(E). The court next considered whether Employee presented sufficient evidence to show his injuries and need for medical treatment arose primarily from the January 30, 2018 work accident. In considering the conflicting opinions of Drs. Ball and Hazlewood, the court noted that it is to consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015). Within this framework, the court observed that both doctors were equally qualified to offer expert medical opinions in this case. It then noted that Dr. Ball treated Employee both before and after the 2018 injury, whereas Dr. Hazlewood examined him only once. As such, the court found that factor favored Dr. Ball. However, the court stated that the critical factors, which it found weighed in Dr. Hazlewood's favor, were the information available to the doctors when they provided their opinions and the importance of that information.

First, the court observed that Dr. Ball acknowledged the 2018 work accident did not cause any anatomical change to Employee's lumbar spine and related structures. Second, the court concluded that Dr. Ball had diagnosed Employee with CRPS in the right leg despite the lack of objective criteria supporting the diagnosis. For example, the normal electrodiagnostic test results and the appearance of symptoms bilaterally weighed against the diagnosis of right lower extremity CRPS. Finally, the court addressed Dr. Ball's opinion that Employee's testosterone deficiency due to long-term opioid use was causally

---

[4] Because of our holding on the issue of causation and remand of the case, it is unnecessary for us, in the first instance, to address the vocational testimony contained in the record within the scope of this appeal.

related to the work injury. In support of his opinion, Dr. Ball stated that he "might have" weaned Employee off narcotic medications had the 2018 work accident not occurred. He also concluded Employee's morbid obesity was causally related to the 2018 work injury because Employee's increased pain caused by the work injury resulted in inactivity, which contributed to weight gain. The trial court determined these opinions were speculative and afforded them no weight.

In contrast, the court found that Dr. Hazlewood based his opinions on objective test results, a comprehensive review of Employee's medical records, and his physical examination. These supported Dr. Hazlewood's opinion that Employee does not qualify for a diagnosis of right lower extremity CRPS. Dr. Hazlewood based this conclusion on the facts that CRPS is extremely rare and that Employee's symptoms appeared bilaterally despite only Employee's right leg's being symptomatic, suggesting his symptoms were more likely related to disuse. Dr. Hazlewood also noted that Employee's SI joint testing was negative, and he opined that Employee's right-knee complaints were related to a degenerative arthritic process, obesity, and age. Finally, Dr. Hazlewood noted that Employee's testosterone deficiency predated his most recent work injury and that his obesity was related to his preexisting depression, medications, and diet.

In considering both physicians' opinions, the court acknowledged that an aggravation of a preexisting condition can result in permanent disability if it causes disabling pain. The court observed, however, that Employee rated his pain at six out of ten shortly before the work incident and that his pain levels remained relatively the same after. The court accepted as persuasive Dr. Hazlewood's opinion that Employee's increased pain without evidence of an anatomical change "is not a true medical aggravation, and no objective, anatomical changes occurred based on objective testing." As a result, the court concluded Employee did not sustain any permanent physical injuries from the January 30, 2018 work accident. The court then found that Employee cannot maintain a claim for a mental injury in the absence of a compensable permanent physical injury pursuant to Tennessee Code Annotated section 50-6-102(15). Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption

of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

Employee raises two issues in his notice of appeal: (1) whether the trial court erred in accepting Dr. Hazlewood's opinion over that of other providers in its determination that Employee did not sustain any permanent physical injury arising primarily from the work accident; and (2) "[o]ther secondary issues [to] include whether the trial court erred in failing to consider Employee's Motion to Exclude certain Expert Testimony of Dr. Jeffrey Hazlewood and/or Continue the Trial to allow Employee to take the deposition of Dr. Kadrie; failing to consider Employee's Motion to Continue Trial and Evidentiary Filings and Request for an Expedited Status Conference; and failing to consider Employee's Supplement to the same; and failing to consider Employee's Motion; and failing to consider or grant Employee's Motion to allow Affidavit/Rule 72 Declaration of Dr. Tareck Kadrie."

For its part, Employer responds that the trial court's decision should be affirmed because the preponderance of the evidence supports the trial court's findings. Employer also contends that Employee waived the "secondary issues" identified in his brief by failing to provide any legal argument in support of the issues raised.

*Expert Medical Opinions*

It is well-established that, when faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept, and we will not disturb that decision absent an abuse of discretion." *Jimenez v. Xclusive Staffing of Tenn., LLC*, No. 2016-06-2377, 2017 TN Wrk. Comp. App. Bd. LEXIS 45, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2017). A trial court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 348, 358 (Tenn. 2008).

As we have previously stated,

[W]hen medical opinions conflict, . . . the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

9

*Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017) (internal quotation marks and citations omitted). Furthermore, we have observed that

> a reviewing court can review documentary evidence, including expert depositions, *de novo* in order to determine where the preponderance of the evidence lies. However, with respect to the trial court's ultimate determination, a reviewing court should acknowledge the trial court's discretion to evaluate which expert's opinion is entitled to greater weight based on the totality of the evidence presented to the court and is to review such a determination under an abuse-of-discretion standard.

*Johnson v. Inspire Brands d/b/a Blazin Wings, Inc.*, No. 2020-08-0731, 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *18 (Tenn. Workers' Comp. App. Bd. Sept. 7, 2022). We must also consider that certain expert medical testimony in the present case was presented by deposition, while other expert medical testimony was presented live during trial. Thus, we are to give "considerable deference" to any of the trial court's factual determinations based, in whole or in part, on that live testimony. *Madden*, 277 S.W.3d at 898.

In determining where the preponderance of the medical evidence lays, the trial court analyzed the experts' opinions within the proper precedential framework by reviewing the experts' qualifications, the circumstances of their examinations, and the information available to them. It noted that Dr. Hazlewood based his opinions on the results of objective testing, while it deemed certain of Dr. Balls's opinions speculative.

Moreover, our *de novo* review of the deposition testimony and documentary evidence leads us to conclude, like the trial court, that Dr. Hazlewood's opinion on the issue of medical causation was more persuasive. Simply put, the preponderance of the evidence does not support a conclusion that the trial court abused its discretion in accepting Dr. Hazlewood's opinion over that of Dr. Ball with respect to whether Employee suffered any permanent physical injury that arose primarily out of the 2018 work accident.

However, we conclude that the preponderance of the evidence *does* establish that Employee suffered a compensable temporary aggravation of one or more of his preexisting conditions. An aggravation of a preexisting condition is compensable if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of the employment," meaning the "employment contributed more than fifty percent (50%)" in causing the aggravation. Tenn. Code Ann. § 50-6-102(12)(A)–(B). "Shown to a reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not[,] considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(12)(D) (2024). Thus, although we agree that Employee did not meet his burden of proving any permanent impairment caused primarily

by the work accident, the preponderance of the evidence supports a finding that Employee *did* sustain a compensable physical injury, albeit temporary in nature.

*Mental Injury*

Having determined that Employee suffered a compensable physical injury temporary in nature, we must address whether it was error for the trial court to summarily conclude Employee is unable to establish a compensable mental injury based on the language in Tennessee Code Annotated section 50-6-102(15). We conclude that it was. In *Nickerson v. Knox County*, No. E2020-01286-SC-R3-WC, 2021 Tenn. LEXIS 124 (Tenn. Workers' Comp. Panel June 8, 2021), the Supreme Court's Special Workers' Compensation Appeals Panel affirmed and adopted as its own our opinion addressing the statutory definition of "mental injury" in the context of a workers' compensation case. As the Appeals Panel noted, Tennessee Code Annotated section 50-6-102(15) defines the term "mental injury" as

> a loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury or an identifiable work[-]related event resulting in a sudden or unusual stimulus, and shall not include a psychological or psychiatric response due to the loss of employment or employment opportunities.

*Id.* at *11. As also noted in *Nickerson*, "since at least 2002, the legislature has recognized two types of mental injuries: those arising primarily out of a compensable physical injury and those arising primarily out of an identifiable work-related event resulting in a sudden or unusual stimulus." *Id.* Here, Employee has not alleged that the work-related accident itself caused a "sudden or unusual" mental stimulus. Thus, only the first category of mental injury claims is pertinent to this appeal. Consequently, as a matter of first impression, we must consider whether a compensable event that causes a *temporary* physical injury can support a claim for a mental injury.

Our primary consideration in this analysis is the plain and ordinary meaning of the phrase "compensable physical injury" as used in Tennessee Code Annotated section 50-6-102(15). That subsection does not include the word "permanent" when describing "compensable physical injury." As noted above, Tennessee Code Annotated section 50-6-102(12) makes clear that an aggravation of a preexisting condition can be compensable if it arose primarily out of a work-related accident. We have previously held that an aggravation or exacerbation of a preexisting condition need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation. *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). Furthermore, an injury that does not result in a permanent physical impairment can still be the primary cause of the need for future medical treatment. *Lee v. Federal Express Corp.*, No. 2020-08-0214, 2022

11

TN Wrk. Comp. App. Bd. LEXIS 29, at *8 (Tenn. Workers' Comp. App. Bd. July 5, 2022). Thus, we conclude that the phrase "compensable physical injury," as used in Tennessee Code Annotated section 50-6-102(15), refers to any compensable physical injury, whether temporary or permanent in nature. Consequently, a work-related accident that results in a physical injury that causes the need for medical care and/or temporary disability, even if there is no subsequent finding of permanent medical impairment, constitutes a "compensable physical injury" that can form the basis of a mental injury claim under section 102(15).

Here, Employer did not refute the occurrence of the work-related accident in January 2018. Employee presented undisputed proof of increased symptoms in his back and leg following this incident, which he reported immediately and for which he received medical treatment. Even Employer's medical expert, Dr. Hazlewood, acknowledged that the January 2018 work accident caused a soft tissue injury that exacerbated Employee's preexisting low back condition. Moreover, both testifying psychiatrists agreed Employee suffered a psychological injury as a result of the physical injury, and both rendered impairment ratings primarily related to that mental injury, although they disagreed as to the appropriate psychological diagnoses and extent of mental impairment.

Thus, we conclude the trial court erred in summarily dismissing Employee's claim for a mental injury based on its finding that Employee's physical injury did not result in any degree of permanent medical impairment or permanent physical disability. On remand, therefore, the trial court must consider whether, given our finding that Employee sustained a compensable physical injury, albeit *temporary* in nature, Employee met his burden of proving a compensable mental injury or a compensable permanent aggravation of any preexisting mental condition and, if so, the degree of permanent disability caused by that mental injury or aggravation, if any.

*Secondary Issues*

Last, we turn to what Employee described as his "secondary issues." As noted above, Employer argued in its brief that Employee waived the "secondary issues" by failing to offer any legal argument in support of them. In his reply brief, Employee argued that Employer's pointing out the legal deficiencies in Employee's brief "opened the door" for Employee to reply. In support of his position, he cites Tenn. Comp. R. and Regs. 0800-02-22-.06(3) (2023), which provides in relevant part:

> The appellee shall have fifteen (15) calendar days after the filing of the appellant's brief or the expiration of the time for the filing of the appellant's brief, whichever is earlier, to file a brief with the clerk of the appeals board. No reply brief shall be filed unless the appellee raises an issue or issues on appeal not previously addressed in the appellant's brief. Under such

circumstances, the appellant may file a reply brief within five (5) business days addressing only the issues or issues not previously addressed.

Here, Employee argues that Employer's mere act of addressing Employee's failure to provide legal support for his arguments in its responsive brief somehow "opens the door" for him to provide supplemental argument. We disagree. Employer's brief pointed out that Employee provided no argument regarding these "secondary issues" in his brief on appeal. Employer did not raise any new issues as contemplated in the rule cited above to which Employee should be afforded a response.

As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). When an appellant fails to offer substantive arguments on appeal, an appellate court's ability to conduct meaningful appellate review is significantly hampered. *Holmes v. Ellis Watkins d/b/a Watkins Lawn Care*, No. 2017-08-0504, 2018 TN Wrk. Comp. App. Bd. LEXIS 7, at *3-4 (Tenn. Workers' Comp. App. Bd. Feb. 13, 2018). Moreover, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Accordingly, we conclude the "secondary issues" raised by Employee were waived.

**Conclusion**

For the foregoing reasons, we reverse the trial court's finding that Employee did not suffer a compensable physical injury. Instead, we conclude the preponderance of the evidence supports a finding that he suffered a compensable temporary aggravation or exacerbation of one or more of his preexisting physical conditions. We further conclude that a compensable physical injury need not result in permanent disability to support a claim for a mental injury as defined in Tennessee Code Annotated section 50-6-102(15). In light of this holding, we remand the case for the trial court to make additional findings based on the evidence presented during trial as to whether Employee suffered a compensable mental injury or permanent aggravation of a preexisting mental condition and, if so, the extent of his mental impairment and permanent vocational disability related to that injury, if any. We further conclude Employee waived the issues identified as "secondary issues." All other aspects of the trial court's order are affirmed. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| Jason Bednar | ) | Docket No. 2018-01-0218 |
|---|---|---|
| | ) | |
| v. | ) | State File No. 9290-2018 |
| | ) | |
| Memorial Healthcare System d/b/a | ) | |
| Memorial Hospital, et al., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Troy Haley, Administrator of the | ) | |
| Bureau of Workers' Compensation | ) | |
| Subsequent Injury and Vocational | ) | |
| Recovery Fund | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of April, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Carmen Y. Ware | | | | X | cyware@thewarelawfirm.com |
| C. Douglas Dooley Mickala Lewis | | | | X | doug.dooley@leitnerfirm.com mickala.lewis@leitnerfirm.com |
| Patrick Ruth | | | | X | patrick.ruth@tn.gov |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov